The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the United States Court of Appeals for the Fourth Circuit are admonished to draw nine, give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. I'd like to apologize for the temperature in this courtroom. It's very warm. The General Services Administration is working on it and hopefully we'll make things more comfortable for all of us before too long. All right, we're happy to hear argument in the United States v. Adeyale. Good morning, Your Honors. My name is Robert Biddle. I represent the appellant, the defendant in the criminal case below in the U.S. District Court for the District of Maryland. The Court's made it very clear in the calendar and the squib that it's primarily interested in the multiplicity issue, which is what I will address, but we're certainly not waiving several other arguments. We have other issues and we'll submit on the briefs on those issues unless I have time at the end. The multiplicity issue presented to the Court here is whether Judge Chazanow erred below in declining to dismiss as multiplicitous counts five and six of the indictment. The Court and the government engaged in a colloquy, which is in the transcript, regarding the basis for the counts and why certain counts should be stricken in the Court's view and why other counts should not. Basically what the experienced District Court judge did was attempt to group the counts, sort of akin to grouping in the sentencing guidelines, so that one deposit would be grouped with one or more withdrawals. The Court deemed that each deposit with its corresponding withdrawals would be one unit, essentially one execution of the scheme, which is what the statute prohibits, an execution of a bank fraud. The problem with that is that the record is actually quite murky on that. It was really highlighted for the Court on appeal by the joint appendix and the government's supplemental joint appendix. Below, the government submitted an exhibit based on time records, which purported to indicate that there was one deposit which corresponded to three successive withdrawals. But in fact, those successive withdrawals on the government's exhibit, which is in the joint appendix at page 555, do not add up to the full amount of the deposit. So there's some stray cash there. And then the government's chart shows a successive deposit of an additional amount of money and a corresponding withdrawal. And Judge Chazanow said, well, we're going to group the initial deposit and the three subsequent withdrawals as one unit. That's one count. You do agree that you can have an overall scheme, but the fact that you have an overall bank fraud scheme doesn't mean that there are not separate and distinct acts that are taking place in the execution of that scheme. That's correct, Your Honor. The challenge here is that the case law really looks at a difference between the mail and wire fraud statutes and the bank fraud statute. Yes, but if you have a bank fraud scheme, I mean, just because the different counts relate to bank fraud and just because the different counts relate to defrauding the same bank, and just because they are carried out by taking these checkbooks out of mailboxes and getting the students to make their accounts available and depositing the checks there and taking out the funds before the bank catches on to what's going on, all of those things would be common between counts five and six, and yet that would not in and of itself make counts five and six multiplicitous, would it? That's correct, Your Honor. The issue before the court is how has the traditional test laid out in Colton by this court several years ago, how does it apply to this case? And basically, again, drawing analogy from the other areas of the law, this is a little like RICO where you talk about continuity and relatedness in acts. The case law, this court's case law, there have been several published decisions, talks about how related are the acts, how dependent are they? And in Colton, the court said, well, we're going to see these various transactions relating to a loan as being interrelated sufficiently. It's a judgment call, in a way, on the part of the district court. It's a multifactor test. It's a judgment call. I thought counts five and six related to separate acts of depositing a check, and I thought that each of those counts involved a distinct deposit, and that each involved a deposit of distinct and different fraudulent checks. Your Honor, if the court were to... Check, isn't that correct? It's correct to... If they were different deposits, they were different acts of depositing. Correct. And in each act, a different check was deposited. That second part, Your Honor, is the problem, and here's why. The court has Government's Exhibit 1A, Chart 1A at page 555 of the Joint Appendix, and then if Your Honors can take a look at the Government Supplemental Joint Exhibit, SJA2, the facts are considerably clouded because according to the bank statement, which, of course, we all look at our bank statements, hopefully, at the end of the month, is the summary of what the bank actually did with the money, was according to the bank statement, the money was all lumped together before any withdrawals were applied. Well, that would be an evidentiary matter at which the district court would be much more familiar than we would be. Right, and my... So why wouldn't there be a degree of deference on something that's as fact-bound as what you've just described? Well, two points, Your Honor. One is that the government properly cited the test for error, at least with respect to a factual issue being clear error, and at the very least, the facts are, in fact, murky here. It's not clear... That's why we have district judges. Right, and that's why a remand would be appropriate to Judge Chasnow to say at trial and subsequently... Why would someone deposit the same check twice? I mean, normally, you think of depositing each check once. Correct, and this is not a confusion about the bank statement erroneously indicating two checks were deposited multiple times. The same check was deposited twice. The bank statement indicates that both checks were posted on the same day, and all of the... So you can make several deposits on the same day. That's correct, but if the unit, getting back to my initial contention here, which is the court was struggling below with coming up with a unit of prosecution that fit this court's standards, which is an execution of the scheme, that it was based on an incomplete appreciation and a lack of an evidentiary record as to whether the deposits were related or unrelated. I thought the test was whether or not they were dependent on each other. Well, dependency is another term that's used, and in fact, according to the bank statement, they would have had to be very dependent because the bank statement suggests that both deposits, for the purposes of posting, were lumped together. And again, Your Honor, that's at S.P.A. 2. But the point is that the scheme wasn't dependent on using independent accounts. Well, our contention in the brief, which is still our contention, is that the proper unit of prosecution should have been the use of a particular account. Why is that? Well, for one thing... It doesn't matter. They're an independent act. Well, for one thing, Your Honor, and this is throughout the cases cited by the parties in any Lexis or Westlaw search, other circuits are struggling with this. The tests are very murky. They're difficult for district courts to apply, and obviously Judge Chazanow was trying diligently to come up with a test that worked. A check doesn't seem to be a very difficult concept to apply. Except if the funds that come from it are from another deposit or multiple deposits. And that's what Judge Chazanow was trying to do. This court said in Colton, we're not going to find that every act within the scope of a scheme is an execution. So districts, you've got to back up. Under your theory, the person who defrauded the bank over and over and over again would, under your view of multiplicity doctrine, be on the same footing as somebody who only defrauded the bank once. And, you know, it's like subsequent acts of fraudulent behavior, freebies as far as the indictment is concerned. And, you know, that can't be the case because, you know, one side of multiplicity doctrine is you don't want to take a single act and just splice it into a dozen different acts. But there's another dimension to multiplicity doctrine, which is that the more acts of fraud you commit, the more you open yourself up to separate and distinct counts. And it's that latter situation that Judge Chazanow at least found here. And given the fact that we have a multi-factor test, which number one is kind of a judgmental act, and number two is dependent on particular facts and evidentiaries, I'm hard-pressed to say where Judge Chazanow went wrong. Well, the question is in reviewing district court's decision under whatever the standard is, clear error or what have you, is did the I don't know that that matters. Did the district court have an understanding of the facts underlying the test that it was applying? If the court is continuing to follow Colton, and Judge Agee, there is a simple solution to this, but it wouldn't be consistent with Colton, which would be every withdrawal of money in a bank fraud scheme across the board is an execution of the scheme. And that gets to Judge Wilkinson's point about, well, that's something we want to deter. But that's not the approach this court has taken. This court has said, we need to ratchet back from that extreme position and come up with something that is a compromise, if you will. But in order for the district court to come What's extreme about defrauding a bank twice, you get two counts? Well, the concern in Colton was, is that if that had been the court's metric, Your Honor, in Colton, it would not have found any counts to be multiplicitous in Colton. Colton's a published decision. It's been around for a number of years. I believe it's cited in subsequent decisions. And this court was unwilling to go that far. And I agree with the court that it's a balancing test, and that Judge Chazin, there's no question Judge Chazin I was trying to balance this. I mean, they're two different dangers. It's sort of a scylla in cherubitis. That's right. And in order for an experienced judge to make that call, they need to have a clear factual record. And that's why I'm asking for a remand here so the judge can get an understanding, rather than this court having to try to make a decision based on what is a very murky record about the relationship between the deposits and withdrawals. I want to make sure that I've got the bottom line philosophy of your position. I would characterize that in this way. If a defendant steals 50 of these checks from 50 different mailboxes and deposits them, whether at once or on 50 different days in a single banking account, that's a single event under your theory. I'd like to answer that in two parts, Your Honor. First, it's a very good question. If there are separate deposits where the funds from one deposit don't stay in the account until the second deposit, then they are separate executions of the scheme and it wouldn't be one. Because it has to do with the relationship, the money, where the money came from that's being withdrawn, using Judge Chazinow's test. If the 50 deposits were made on every single day, no withdrawals were made until the 50th deposit was made, then our position would be one count of bank fraud. It's the relationship between the money and the account that's the metric. And that's where it's foggy, and that's why there needs to be a remand here. Are you saying the government couldn't simply charge the deposits? That's a possibility, Your Honor. The problem is that all the deposit counts in this case were dismissed, either by Judge Chazinow or by the government in their own choice. So now we're presented with a case which only involves withdrawals, which is why I think this case is unsuited to changing the Fourth Circuit rule or even applying it at this level, because there isn't the factual record before the Fourth Circuit. So the deposits and the withdrawals were awfully closely linked because they withdrew them almost immediately after the deposit. I understand. I mean, but each, what I'm just saying is that each, counts five and six, each involved a separate deposit and a separate withdrawal. The problem is the withdrawals may have been from money from both deposits. That's the point I'm trying to make. But they were still separate deposits. That's correct. Absolutely, Your Honor. And it was certainly the depositing was as much an act of fraud as the withdrawal. Right. And if the government... They were both fraud. If the government hadn't dismissed those counts, then... I don't know what difference it makes that they dismissed other counts. What I'm saying is that, let's say, even if we took your view of it, that the withdrawals were from both deposits, that doesn't impeach the fact that each deposit was a separate fraudulent act. That's what I'm saying because they were both fraudulent acts. That's correct, Your Honor. That's correct. And it's trying to come up with a workable definition and that's why I think the law, frankly, is muddled. No, it's probably better not to come up with a global definition. I'm scared of those things sometimes. Maybe we could just go and grope our way, case by case, as the facts before us arrive and leave these sort of close factual questions to district courts and all the rest. Anyway, you've got some rebuttal time. Thank you.  Thanks very much, Your Honor. Ms. Mazur, I'd be happy to hear from you. May it please the Court, my name is Margaret Mazur and I represent the government in this case. I'd like to begin where defense counsel left off on the multiplicity issue. The standard here, as the Court's well aware, is sovereign on the law but clear error on the facts. And as Judge Wilkinson, as you pointed out, this is a very close factual question. Chief Judge Chazanow below heard the evidence. She addressed this issue both before trial at the motion to dismiss and then after trial, after hearing all the evidence. And she determined after hearing all the evidence that the scheme here was the deposit of the counterfeit check and the attempt to withdraw the counterfeit check. And as part of that scheme, the execution was the withdrawal. Based on that determination, the government voluntarily dismissed the deposit counts and voluntarily dismissed one of the withdrawal counts so that there was one withdrawal count for each deposit count. Counsel for defendant has argued that the record is murky. Essentially, I think his argument is that we should be able to trace one for one, the dollars going in and the dollars coming out. But at the end of the trial, the government submitted a summary chart showing when the money went in, when the money went out. The government, the court, and the defendant's counsel all discussed whether or not these counts were multiplicitous. And the court found that the deposit in count 2 was related to the withdrawal in count 5. The deposit in count 3 was related to the withdrawal in count 4 and count 6. And that one withdrawal was an execution. And so the government went forward on count 5 and count 6.  But she pruned it a little bit, the indictment. She pruned it? She did, Your Honor. She pruned it. She looked at it carefully and she determined that a deposit-withdrawal pairing was the scheme and the execution was the withdrawal. And Judge Chasnow and the government and defense counsel pruned the indictment down from 5 counts to 2 for the case. And 2 counts were ultimately submitted to the jury. And that is well within the law established by Colton. In Colton, this court held that an execution of a bank fraud scheme is an independent act. It has to be substantively independent. And here, Judge Chasnow heard the argument by defense counsel that this should be a count by a count. And she determined that while using the student accounts was an act in furtherance of the scheme, it was not an independent act. If the defendant couldn't use student A's account for one check, he could use student B's account for that check. It wasn't the nature of the scheme. She found that the deposits and withdrawals were independent acts that were appropriately charged as executions of the scheme here. Okay, do you have anything further you wish to add on this point? I do not, Your Honor. Do you have any questions? Okay, Your Honor, if you have no more questions, I'm happy just to briefly... It's fine. The rest of the issues are covered by our precedents. All right, I'll be happy to cede my time back, Your Honor. Thank you so much. I won't take any extra time unless the court has any further questions. I'll rest as well. Thank you very much. We've come down and agreed counsel. We'll move into our next case.
judges: J. Harvie Wilkinson III, G. Steven Agee, Albert Diaz